UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| INTELIUS SALES CO., LLC and <br> INTELIUS, INC. <br><br> Appellants, <br><br> v. <br><br> IDEARC INC. and IDEARC MEDIA, LLC <br><br> Appellees. | § <br> § <br> § <br> § <br> § <br> § CIVIL ACTION NO. 3:11-CV-339-B <br> § (Appeal of Adversary No. 09-03416-BJH) <br> § <br> § <br> § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Intelius Sales Co., LLC's and Intelius, Inc.'s (collectively "Intelius") appeal from an order of the bankruptcy court granting summary judgment in favor of debtors Idearc Inc. and Idearc Media, LLC (collectively, "Idearc") and the bankruptcy court's final judgment. Having considered the decision below, the briefing of the parties, and the applicable law, the Court is of the opinion that the order and judgment of the bankruptcy court should be and hereby are **AFFIRMED**.

### I.

### BACKGROUND & PROCEDURAL HISTORY

This appeal arises from the bankruptcy court's determinations that certain funds held by Idearc were not held in an express trust for Intelius and that it should not impose a constructive trust on these funds. On January 1, 2005, Intelius and InfoSpace Sales, LLC ("InfoSpace") entered into an Advertising and Promotion Distribution Agreement (the "Agreement"), which was later amended

1

on February 26, 2005 (the "First Amendment") and on June 12, 2006 (the "Second Amendment").[1] Under the Agreement, Intelius was to provide to InfoSpace data and technology related to Intelius's free people search services and, in return, InfoSpace would direct Internet traffic to Intelius's web sites.[2] Intelius also agreed to pay InfoSpace a share of the net revenue received from visitors who had been directed to Intelius's sites by InfoSpace, subject to a minimum guarantee. During negotiations of the Agreement, InfoSpace expressed some concern regarding Intelius's ability to fulfill its obligations, given that Intelius was a new, small and privately-held company without a significant track record or assets. The Agreement therefore required that Intelius provide InfoSpace with a deposit of $1,000,000 (the "Deposit") to guarantee Intelius's performance under the Agreement. The Deposit was later increased to $1,500,000 pursuant to the First Amendment. When Intelius and InfoSpace amended the Agreement a second time, they changed the provision regarding the Deposit to read as follows:

> Intelius has previously paid to InfoSpace one million five hundred thousand dollars ($1,500,000) ("Deposit") to guarantee its obligations under the Amended Agreement. InfoSpace may continue to hold the Deposit to guarantee Intelius' obligations to InfoSpace under the Amended Agreement as modified by this Second Amendment until the earlier of the termination of the Amended Agreement as modified by this Second Amendment or the date of an initial public offering of Intelius Inc. on a major stock market. At such time, InfoSpace shall immediately refund to Intelius the Deposit, less amounts, if any, Intelius owes to InfoSpace under the Amended Agreement as modified by this Second Amendment.

R.499.

---

[1] Both Intelius and InfoSpace maintained their principal offices in Washington. As such, Intelius and InfoSpace agreed that the Agreement and its amendments would be "governed by Washington law, and construed in accordance with, the laws of the State of Washington[.]" Intelius and Idearc agree that Washington state law applies to the Agreement. R.484.

[2] Most of the core facts regarding this appeal are not in dispute. The Court takes its factual account from Intelius's brief, which, in turn, cites to the record on appeal. The Courtnotes where facts are in dispute.

Idearc later purchased InfoSpace's assets and assumed its liabilities pursuant to an Asset Purchase Agreement executed on October 31, 2007. Under the purchase agreement, and unbeknownst to Intelius, Idearc did not physically receive Intelius's Deposit; rather, it was accounted for as a purchase-price adjustment and carried by Idearc as an accounting entry for its general cash account. Prior to execution of the purchase agreement, InfoSpace requested that Intelius consent to the assignment of InfoSpace's rights, duties, and obligations under the agreement to Idearc, and Intelius gave this consent on October 5, 2007. R.530-31. Later, for purposes of an external audit, Intelius requested that Idearc "confirm" the $1.5 million Deposit, which Idearc did confirm.[3] R.554; *see also* R.565 (February 2009 email chain regarding Deposit confirmation). The parties disagree on the implications of Idearc's assumption of the InfoSpace contract and this "confirmation" in 2009.

Unfortunately for both parties, Idearc filed for bankruptcy on March 31, 2009 in Bankruptcy Case No. 09-31828 (BJH). Idearc then terminated the Advertising Agreement on May 11, 2009 under section 6.2 of the Agreement, which gave Idearc the right to terminate the Agreement if

---

[3] The record in appeal includes a February 23, 2009 email from Greg Packwood of BDO Seidman, Intelius's auditor, to Rod Diefendorf of Idearc in which Packwood writes: "We are in the process of completing our audit of Intelius and need to confirm the deposit that included [sic] in the attached e-mail. Can you please sign and fax or scan the confirmation back to me today?" R.85. The confirmation form explained,

> Our auditors . . . are engaged in an audit of our financial statements. In connection therewith, please confirm directly to BDO Seidman, LLP whether or not the balance due us at December 31, 2008, as shown below, agrees with your records. If this information does not agree with your records, please furnish any information you may have that will assist our auditors and us in reconciling the difference.

R.86. The form's middle section had two columns, one of which was labeled "Account/Description" and one of which was labeled "Balance." Under the Account/Description section was written "Deposit related to Advertising and Promotion Agreement." Under the Balance column was written "$1,500,000." The bottom portion of the form had a section which was evidently pre-filled by Intelius, stating "The above information agrees with our records, except as follows:" under which an Idearc employee hand-wrote "No exceptions." and then wrote and signed his name. *Id.*

3

Intelius's base revenue share payments fell below $200,000 per month for a full calendar quarter. R.499. Intelius then requested the full return of the Deposit, under the Agreement's provision stating that upon termination of the Agreement, Idearc was to "immediately refund to Intelius the Deposit" less any amounts owed by Intelius. *See id.* After continued attempts to obtain the Deposit failed, Intelius filed its adversary complaint against Idearc in bankruptcy court on November 13, 2009, Adversary No. 09-3416(BJH).[4]

In the adversary proceeding, Intelius alleged, *inter alia*, that Idearc held the Deposit in trust for Intelius's benefit, and therefore the Deposit was not property of the bankruptcy estate. Idearc denied that the Deposit was held in trust and also asserted an offset and counterclaim of $303,898.70 for certain unpaid pre-petition invoices. On Idearc's motion for summary judgment on Intelius's trust claims and Idearc's counterclaim, the bankruptcy court found that there was no express trust created by the parties' Agreement, and it also found that no constructive trust should be imposed as a matter of law. Accordingly, the bankruptcy court granted Idearc's motion for summary judgment from the bench at the October 7, 2010 hearing on the motion, R.620-32, and then confirmed its bench ruling in its Order of November 4, 2010, R.7-9. The bankruptcy court also entered final judgment on November 4, 2010. Intelius timely appealed the order and final judgment. R.9(a)-9(b).

On appeal from the bankruptcy court, Intelius presented four questions:

a. Whether the Advertising and Promotion Distribution Agreement in effect between Intelius and Idearc, as amended, was intended to, and did in fact,

---

[4] Count One of Intelius's Complaint is titled "The Deposit is Being Held by the Debtors in a Direct Trust, a Resulting Trust or a Constructive Trust on Behalf of Intelius." R.185. Count Two is titled "Alternatively, if the Debtors Misapplied the Deposit Post-Petition, Intelius is Entitled to an Administrative Expense Claim for the Amount of the Deposit." R.187. In its motion for summary judgment, Idearc sought summary judgment on both claims. R.204. Intelius does not appeal the bankruptcy court's determination that Intelius was not entitled to an administrative expense claim.

4

        create an express trust under Washington law, such that the $1,500,000 Deposit paid by Intelius pursuant to the Agreement is not property of the bankruptcy estate.

    b.    Whether the Bankruptcy Court erred when it concluded that the absence of a pre-existing fiduciary relationship between Intelius and Idearc precluded a finding that the Agreement was intended to, and did in fact, create an express trust.

    c.    Whether, if there was no express trust, the Bankruptcy Court erred by refusing to impose a constructive trust over the $1,500,000 Deposit paid by Intelius pursuant to the Agreement, such that the Deposit would be excluded from property of the bankruptcy estate.

    d.    Whether Idearc is and should be equitably estopped from denying the existence of a trust, or any element thereof, with respect to the Deposit.

Appellants' Br. 1.

## II.

## JURISDICTION

This is an appeal of the bankruptcy court's order and final judgment disposing of all claims in Adversary Proceeding No. 09-03416-BJH. The bankruptcy court had jurisdiction over the underlying adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. As the Court's summary judgment order and final judgment resolved all claims and counterclaims raised in the adversary proceeding, this Court is now vested with jurisdiction over the appeal of that order and judgment pursuant to 28 U.S.C. § 158(a)(1).

## III.

## LEGAL STANDARDS

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court. 28 U.S.C. § 158(a)(1) (1994 & Supp. 2005); FED. R. BANKR. P. 8001(a). The district

5

court functions as an appellate court and applies the same standard of review used by federal appellate courts when reviewing the decisions of district courts. *Webb v. Reserve Life Ins. Co.* (*In re Webb*), 954 F.2d 1102, 1103-04 (5th Cir. 1992). The Court reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law and mixed law and fact questions *de novo*. *McLain v. Newhouse (In re McLain),* 516 F.3d 301, 307 (5th Cir. 2008); *Wooley v. Faulkner* (*In re SI Restructuring, Inc.*), 542 F.3d 131, 135 (5th Cir. 2008). A factual finding is clearly erroneous where, "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Memphis-Shelby County Airport Auth. v. Braniff Airways, Inc.* (*In re Braniff Airways, Inc.*), 783 F.2d 1283, 1287 (5th Cir. 1986) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). It is insufficient that the reviewing court, upon examining the evidence, would merely have decided differently if sitting as the trier of fact. *Id.* (quoting *Anderson*, 470 U.S. at 573).

A. *Summary Judgment*

A trial court's grant of summary judgment is reviewed *de novo*. *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994); *see also Hosack v. I.R.S.*, 2007 WL 959034, at *2 (N.D. Tex. Mar. 30, 2007) (citing *Burgos* and applying *de novo* standard in reviewing bankruptcy court's grant of summary judgment). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all

of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. SmithKline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990) Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.; Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

B.  *Equitable Remedies*

A trial court's decision whether or not to impose an equitable remedy such as a constructive trust is reviewed for abuse of discretion. *Burkhart Grob Luft und Raumfahrt GmbH v. E-Systems, Inc.*, 257 F.3d 461, 469 (5th Cir. 2001) ("Because a constructive trust is an equitable remedy, the decision whether to impose it is entrusted to the discretion of the [trial] court, and we review the [trial] court's decision only for an abuse of discretion.") (applying Texas law); *Marine Indem. Insur. Co. of Am. v. Lockwood Warehouse & Storage*, 115 F.3d 282, 287 (5th Cir. 1997).

## IV.

## ANALYSIS

The parties' dispute on appeal centers on whether the bankruptcy court erred in finding that their Agreement did not create an express trust or whether it erred in declining to impose a constructive trust under its equitable powers. Whether the Agreement created an express trust or

whether a constructive trust should be imposed is key given that the Idearc bankruptcy estate does not include "property of others held by the debtor in trust at the time of the filing of the petition." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983). If a trust exists or is imposed, Intelius's Deposit would not be considered part of the bankruptcy estate and Intelius would be entitled to a refund of the full Deposit less any offsets imposed by the bankruptcy court. Conversely, if there is no trust, the Deposit would be included in the bankruptcy estate and Intelius would only be entitled to a pro rata distribution along with other unsecured creditors. Accordingly, the Court examines the parties' evidence and the bankruptcy court's findings regarding whether Intelius and Idearc[5] created an express trust or whether a constructive trust should be imposed.

A. *Express Trust*

Under Washington law, "[a]n express trust is one created by the act of the parties; and where a person has, or accepts, possession of money, promissory notes, or other personal property with the express or implied understanding that he is not to hold it as his own absolute property, but to hold and apply it for certain specified purposes, an express trust exists." *Westview Investments, Ltd.v. U.S. Bank Nat'l Ass'n*, 138 P.3d 638, 643 (Wash. Ct. App. 2006) (citation omitted). An express trust is a fiduciary relationship with respect to property "which arises as a result of a manifestation of an intention to create it" and which subjects the holder of the property to equitable duties to deal with the property for the benefit of another person. *Bowden v. Structured Invs. Co. (In re Bowden)*, 315 B.R. 903, 907 (Bankr. W.D. Wash. 2004) (quoting *In re Marriage of Lutz*, 873 P.2d 556, 571 (Wash.Ct. App. 1994)).

---

[5] The Court uses "Idearc" to also refer to InfoSpace, which later assigned the Agreement to Idearc.

The party asserting an express trust bears the burden of establishing each element of a trust. *See, e.g., Mills v. Hayden*, 221 P. 994, 996 (Wash. 1924). "[B]efore a trust will be found to exist, there must be a clear manifestation thereof." *Niemann v. Vaughn Cmty. Church*, 113 P.3d 463, 477 (Wash. 2005) (citing *Hoffman v. Tieton View Cmty. Methodist Episcopal Church*, 207 P.2d 699, 705 (Wash. 1949)). The "clear manifestation" must be established by "clear and satisfactory" evidence, meaning that "the instrument manifests an intention to create a trust." *Id.* (citations omitted); *see also Mills*, 221 P. at 996.

The parties agree that Intelius has established at least some of the elements of an express trust, specifically that Idearc accepted the $1.5 million Deposit from Intelius and that it was meant for certain purposes, specifically to guarantee Intelius's obligations under the Agreement. However, they dispute whether the Agreement shows the parties' intent to create an express trust and whether the Deposit was Idearc's property or Intelius's property. Intelius argues that the Agreement's language that Idearc was to "hold the Deposit," until it was required to "immediately refund" it back to Intelius, as well as the language specifying the purpose for which the Deposit would be used, *i.e.*, to pay amounts Intelius owed upon termination of the Agreement or an initial public offering of Intelius stock, evinces intent of the parties to create a trust and also shows that the Deposit was not property of Idearc. However, Intelius's interpretation of Washington state law regarding express trusts is too broad. A transfer of money to be applied for certain purposes is not by itself sufficient to create an express trust. Otherwise, conceivably all security deposits could be considered held in trust, as every security deposit is meant to be applied for certain purposes, specifically to protect the recipient of the deposit in the event that the depositor fails to carry out its obligations. Further, as explained by the bankruptcy court, the Agreement itself does not indicate any intent to create a

trust, as there is no language indicating this intent such as a requirement to keep the Deposit in a segregated account or any language regarding a fiduciary relationship or fiduciary duties. The Court agrees with Intelius that no particular language is required to create an express trust,[6] though it disagrees with Intelius's contention that the lack of the usual trust language is irrelevant.[7] On the whole, there is no evidence of intent to create an express trust.[8] Rather, the language in the Agreement is merely indicative of a "garden-variety" security deposit, which generally creates a debtor-creditor relationship rather than a trust relationship because the security deposit is held for the benefit of the *recipient* in case of breach by the depositor, although the depositor expects the eventual return of the deposit.[9] *See, e.g., Textron Fin. Corp. v. Underwood* (*In re Underwood*), 2004 WL 5607954, at *3 (Bankr. E.D. Was. Apr. 14, 2004) (despite language in security agreement that stated that the debtor held proceeds in trust, agreement between general contractor and

---

[6] *See, e.g., Bowden*, 315 B.R. at 907 ("No particular manner of expression is necessary to manifest the trust intention.") (citing RESTATEMENT (THIRD) OF TRUSTS § 10 (2003)).

[7] Although Intelius cites to *Westview* for the proposition that the lack of "trust language" is irrelevant, given an express contractual clause in *Westview* allowing commingling and another relieving the general contractor of liability for breach of fiduciary duty or breach of trust, 138 P.3d at 644, that case is distinguishable from the instant case. In *Westview*, a property owner and a general contractor used a form contract provided by the American Institute of Architects ("AIA"). The contract contained a clause governing payments from the owner to the general contractor for the benefit of subcontractors. The *Westview* court was aided in its determination of whether the contract created an express trust in favor of the subcontractors by the AIA's commentary on the contract, which stated that the general contractor was precluded from using the money received for the subcontractors' work for other purposes. The commentary also explicitly stated that the contract established a trust in favor of the subcontractors. *Id.* at 643-44.

[8] To the extent that Intelius seeks to show the parties' intent to create a trust at the time the Agreement was negotiated and executed based on certain affidavits from an Intelius executive and a former InfoSpace/Idearc executive, the Court agrees with the bankruptcy court's determination that these and other affidavits and evidence did not evince the requisite intent.

[9] The Court finds a lack of intent to create an express trust after reviewing all the evidence, including the affidavits submitted by Intelius.

subcontractor created creditor-debtor relationship with respect to the funds that secured the subcontractor's performance); *see also* Appellees' Br. 18-19 (and cases cited therein). As such, Idearc was merely required to refund an amount equal to the Deposit to Intelius upon termination of the Agreement, rather than hold the Deposit in trust. This Court therefore finds that no material fact exists as to whether the parties' Agreement created an express trust. Accordingly, after conducting a *de novo* review, the Court **AFFIRMS** the bankruptcy court's grant of summary judgment to Idearc on Intelius's express trust claim.

B.  *Constructive Trust*

This Court reviews the bankruptcy's refusal to impose a constructive trust for abuse of discretion. *Burkhart*, 257 F.3d at 469. Courts may impose a constructive trust when "the legal title to property is placed in one person under such circumstances as to make it inequitable for him to enjoy the beneficial interest" in the property. *Scymanski v. Dufault*, 491 P.2d 1050, 1057 (Wash. 1972) (citation omitted). Among other grounds, "[e]quity will raise a constructive trust and compel restoration where one through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold." *Id.* Even where no such grounds such as fraud exist, a court may impose a constructive trust "when the person holding title to property has an equitable duty to convey it to another on the grounds that they would be unjustly enriched if permitted to retain it." *City of Lakewood v. Pierce County*, 30 P.3d 446, 450 (Wash. 2001) (citation omitted). However, "[b]ecause the constructive trust doctrine can wreak [] havoc with the priority system ordained by the Bankruptcy Code, bankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason to do so." *Haber Oil Co. v. Swinehart* (*In re Haber Oil Co.*), 12 F.3d 426,

436 (5th Cir. 1994) (citation omitted); *see also Torres v. Eastlick* (*In re N. Am. Coin & Currency, Ltd.*), 767 F.2d 1573, 1575 (9th Cir. 1985) ("We necessarily act very cautiously in exercising such a relatively undefined equitable power [of imposing a constructive trust] in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws.") (citations omitted); *In re First Cent. Fin. Corp.*, 268 B.R. 481, 499 (Bankr. E.D.N.Y. 2001) (remedy of constructive trust is generally disfavored in bankruptcy) (citing *Haber Oil*, 12 F.3d at 436). As with an express trust, the party asserting a constructive trust bears the burden of establishing the existence of that trust, *Haber Oil*, 12 F.3d at 436, through "clear, cogent, and convincing evidence of the basis for imposing the trust." *In re Marriage of Lutz*, 873 P.2d at 571 (citing *Baker v. Leonard*, 843 P.2d 1050 (Wash. 1993)).

At the bankruptcy court's hearing on Idearc's summary judgment motion, the court listed three reasons for not imposing a constructive trust. First, the court found the summary judgment record devoid of fraud, questionable means, or any other equitable considerations.[10] Second, the court explained that since the Deposit was not physically transferred to Idearc from InfoSpace, there was no *res* upon which it could impose a trust. Third, the court explained that given the context of bankruptcy, "equity disfavors imposing a trust against a debtor simply because the imposition of a trust inherently means that one creditor of the debtor is being preferred to other creditors of the debtor which, of course, is a fundamental premise of bankruptcy law that similarly situated creditors

---

[10] The Court disagrees with Intelius's contention that the bankruptcy court required evidence of fraud before it would impose a constructive trust; rather, the bankruptcy court found that as a whole, there were no equitable considerations which would merit imposition of a constructive trust. *See* R.624 ([I]t appears to the Court that the summary judgment record is lacking equitable considerations such that a constructive or resulting trust should be acquired.").

12

should be treated similarly in a bankruptcy case." R.623-24.

The bankruptcy court did not abuse its discretion in making these determinations and in declining to impose a constructive trust. This Court agrees that the record is devoid of fraud or other questionable practices by Idearc or InfoSpace. Intelius claims that it detrimentally relied on Idearc's statements that allegedly stated that Idearc physically held the $1.5 million Deposit, but the bankruptcy court found that there was no detrimental reliance nor any misrepresentations by Idearc. As explained by the bankruptcy court, it reviewed Intelius's evidence of emails and affidavits and found that rather than suggesting that the Deposit was physically held by Idearc, they merely established that Idearc "stated on February 19th and on February 27th that there is a $1.5 million deposit and they're continuing to state that there is a $1.5 million deposit from Intelius. There's just a disagreement over whether that gives Intelius anything more than an unsecured claim in this bankruptcy case."[11] R.629; *see also* R.627 (bankruptcy court reviews evidence and finds that Idearc acknowledged the $1.5 million Deposit but finds nothing suggesting it was held in trust).

Further, this Court finds that a constructive trust is not necessary to prevent unjust enrichment. This is not the normal case of unjust enrichment where an aggrieved party has granted a benefit and the recipient of that benefit refuses to pay for the benefit received. Rather, Idearc acknowledges that it is obligated to repay the Deposit (less offsets) and merely disputes whether Intelius's claim should enjoy priority over other claimants.[12] Overall, the Court agrees with the

---

[11] This Court similarly finds that the record reveals no misrepresentations by InfoSpace or Idearc at the time Idearc requested that Intelius agree to the assignment of the Agreement to Idearc.

[12] Intelius does not clearly explain, and this Court is unaware of, how Idearc and its creditors would be unjustly enriched should the Deposit be included in the bankruptcy estate. Now that Idearc is in bankruptcy, the entirety of the Deposit will likely be divided among Idearc's creditors, who would then receive only a fraction of their claims. Indeed, Idearc's other creditors would probably argue that it would be

13

bankruptcy court that the equities are not such that the bankruptcy system's presumption of pro rata distribution of claims should be disturbed. The Court reaches this determination even assuming that there was in fact a *res* upon which the Court could impose a constructive trust.[13] As such, the Court finds that the bankruptcy court did not abuse its discretion in declining to impose a constructive trust and **AFFIRMS** the bankruptcy court's determination that no constructive trust should be imposed.[14]

V.

**CONCLUSION**

For all of the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's order granting summary judgment in favor of Idearc Inc. and Idearc Media, LLC, as well as the bankruptcy court's final judgment.

---

inequitable for Intelius to obtain its full deposit rather than a pro rata distribution along with other unsecured creditors.

[13] The Court assumes, without deciding, that Intelius's argument that Idearc should be estopped from denying the existence of a trust was properly raised before the bankruptcy court. However, the Court agrees with the bankruptcy court's rejection of this estoppel argument for the same reasons it finds that no constructive trust should be imposed. The Court agrees that Idearc or InfoSpace made no misrepresentation or false statement which was detrimentally relied upon by Intelius, and therefore Idearc is not estopped from denying the existence of an express or constructive trust.

Also, the Court does not reach Intelius's contention that it should have been able to produce evidence "tracing" funds in Idearc's account, given that it finds that a constructive trust should not be imposed even if there was a *res* upon which it could be imposed.

[14] The Court also affirms the bankruptcy court's determination that no constructive trust should be imposed applying a *de novo* standard of review, given the Court's assessment of the equities in this case.

SO ORDERED.

DATED: July 7, 2011.

                                           _____
                                           JANE J. BOYLE
                                           UNITED STATES DISTRICT JUDGE